IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAPESTRY, INC., | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-21-1941 |
| FACTORY MUTUAL INSURANCE COMPANY, | * |
| | * |
| Defendant. | |
| | * |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Tapestry, Inc.'s ("Tapestry") Motion to Certify a Question of Law to the Maryland Court of Appeals ("Motion to Certify") (ECF No. 29). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons set forth below, the Court will grant the Motion.[2]

---

[1] The Court recognizes that the parties have requested a hearing on the Motion. Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

[2] Also pending before the Court are Defendant Factory Mutual Insurance Company's ("Factory") Motion to Dismiss (ECF No. 14), Factory's Motion to Dismiss Plaintiff's First Amended Complaint ("Second Motion to Dismiss") (ECF No. 19), Factory's Motion for Leave to Exceed the Page Limit Per LR 105.3 ("Motion to Exceed") (ECF No. 37), and Tapestry's Motion for Leave to (1) File Supplemental Brief in Opposition to FM's Motion to Dismiss and (2) File the Supplemental Brief and the Exhibit Thereto Under Seal ("Motion for Leave") (ECF No. 41). Tapestry's filing of its Amended Complaint rendered the original Motion to Dismiss moot. See Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) ("When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded."), aff'd, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny the original Motion to Dismiss without prejudice as moot. Because the Court will

## I. BACKGROUND[3]

### A. Factual Background

Tapestry is the owner of three luxury accessory and lifestyle brands: Coach, kate spade new york, and Stuart Weitzman. (First Am. Compl. ("FAC") ¶ 1, ECF No. 15). Before the spread of the SARS-CoV-2 virus (the "Coronavirus") and its resultant disease, Coronavirus Disease 2019 ("COVID-19"), Tapestry had 1,540 retail and outlet stores under its three brands and operated in at least twenty countries, with 414 stores in the United States, fifteen of which were in Maryland. (Id. ¶¶ 21–23). Tapestry employed approximately 16,000 people across the United States, including 330 in Maryland. (Id. ¶ 23).

Tapestry purchased commercial property insurance policies from Defendant Factory Mutual Insurance Company ("Factory") covering not only common risks like fire, but also unanticipated and novel risks (the "Policies"). (Id. ¶ 25). The Policies cover "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded" for the relevant periods. (Id. ¶¶ 1–2, 170; Factory Ins. Policy ["Policy"] at 1, ECF No. 4-1). The Policies also insure business interruption loss "directly resulting from physical loss or damage of the type insured," by allowing "recovery [] to the extent that [Tapestry is] wholly

---

grant the Motion to Certify, it will deny the Second Motion to Dismiss without prejudice pending the Court of Appeals' ruling. The Motion to Exceed and Motion for Leave are both supported by good cause and unopposed. Accordingly, the Court will grant both Motions.

[3] Unless otherwise noted, the Court takes the following facts from the First Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

or partially prevented from producing goods or continuing business operations or services." (See Policy at 43–65). The Policies do not define what constitutes "physical loss or damage" to property. (FAC ¶ 297). The Policies define the "insured property" in relevant part as "Real Property, including new buildings and additions under construction, in which the Insured has an insurable interest." (Policy at 14).

Tapestry suffered considerable losses due to the Coronavirus. (See id. ¶¶ 10, 158). As of the time Tapestry filed the First Amended Complaint, "at least 1,676 Tapestry employees (including 23 in Maryland) ha[d] confirmed that they contracted COVID-19, and virtually all . . . did so during periods when the Tapestry Stores where they worked were open for business and they were back at work." (Id. ¶¶ 79–80, 151). Thus, Tapestry alleges that the Coronavirus was present in its stores. (See id. ¶¶ 80, 99). Tapestry asserts further that the "high prevalence of infectious COVID-19 cases" in Maryland "makes it statistically certain or near-certain that Coronavirus droplets and aerosols were frequently dispersed into the air and on property in, on and around the Tapestry Stores." (Id. ¶ 88). Tapestry alleges that it suffered hundreds of millions of dollars in losses as a result of the physical loss or damage caused by the Coronavirus. (Id. ¶¶ 10, 152, 155, 227, 338). Factory denied coverage for Tapestry's losses. (Id. ¶ 311).

**B.     Procedural History**

Tapestry filed this action in the Circuit Court for Baltimore City, Maryland, on June 24, 2021. (ECF No. 4). Factory removed the action to this Court on August 2, 2021. (ECF No. 1). On September 23, 2021, Factory filed a Motion to Dismiss. (ECF No. 14). Tapestry then filed the First Amended Complaint on October 14, 2021. (ECF No. 15). The two-

count First Amended Complaint (1) seeks a declaratory judgment in Tapestry's favor and (2) alleges that Factory breached its contract with Tapestry. (FAC ¶¶ 327–338). Tapestry alleges that Factory's breach has caused it to incur damages "estimated to exceed hundreds of millions of dollars." (Id. ¶ 338).

Factory filed its Motion to Dismiss Plaintiff's First Amended Complaint on December 2, 2021. (ECF No. 19). On February 2, 2022, Tapestry filed the Motion to Certify (ECF No. 29) along with its Opposition to the Motion to Dismiss (ECF No. 30). On March 2, 2022, Factory filed its Opposition to the Motion to Certify (ECF No. 36) and its Reply in support of the Motion to Dismiss (ECF Nos. 38, 39). Tapestry filed its Reply in support of the Motion to Certify on March 16, 2022. (ECF No. 40). Tapestry then sought leave to file a Supplemental Brief in Opposition to the Motion to Dismiss on March 23, 2022. (ECF Nos. 41, 42).

## II. DISCUSSION

### A. Standard of Review

The State of Maryland has authorized federal courts to certify unsettled questions of state law to its Court of Appeals. See Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 12-603; Md. Rule 8-305. Under the Maryland Uniform Certification of Questions of Law Act, CJP § 12-601 et seq. (the "Act"), the Maryland Court of Appeals may "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." CJP § 12-603. The purpose of the Act is "to promote the widest possible use of the certification process in order to

promote judicial economy and the proper application of [Maryland]'s law." Proctor v. Wash. Metro. Area Transit Auth., 990 A.2d 1048, 1056 (Md. 2010) (quoting Uniform Certification of Questions of Law Act § 3 cmt. (1995)) (alterations in original). The decision of whether to grant a motion to certify "rests in the sound discretion of the federal court." Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974).

**B.     Analysis**

Tapestry's Motion asks the Court to certify the following question to the Maryland Court of Appeals:

> When a first-party, all-risk property insurance policy covers "all risks of physical loss or damage" to insured property from any cause unless excluded, is coverage triggered when a toxic, noxious, or hazardous substance—such as Coronavirus or COVID-19—that is physically present in the indoor air of that property damages the property or causes loss, either in whole or in part, of the functional use of the property?

(Certification Order Certifying Question Law Md. Ct. App. at 1, ECF No. 29-9). Tapestry argues that this action raises "an important but unsettled question of Maryland insurance law." (Mem. Supp. Mot. Certify Question Law Md. Ct. Appeals ["Mot. Certify"] at 1, ECF No. 29). Tapestry notes that "[c]overage in virtually every all-risk commercial property insurance policy is triggered by some iteration of language describing 'physical loss or damage' to property. Yet, despite its pervasiveness and importance, the provision is undefined in virtually every policy in which it appears." (Id.). According to Tapestry, "[w]ithout guidance from the Maryland Court of Appeals, this Court and federal courts throughout Maryland handling COVID-19 coverage cases are left to guess how this state's highest court would rule" as to this critical issue. (Id. at 2).

Factory responds that this Court previously denied a motion to certify a similar question of law to the Maryland Court of Appeals—broadly speaking, whether the effect of the Coronavirus on a property could constitute "physical loss or damage" to the property in the context of an insurance coverage dispute. See Bel Air Auto Auction, Inc. v. Great N. Ins., 534 F.Supp.3d 492 (D.Md. 2021). Factory further notes that this Court has on two other occasions considered a nearly identical question and granted motions to dismiss without seeking input from the Court of Appeals. See Cordish Cos. v. Affiliated FM Ins., --- F.Supp.3d ---, 2021 WL 5448740 (D.Md. Nov. 22, 2021); Hamilton Jewelry, LLC v. Twin City Fire Ins., --- F.Supp.3d ---, 2021 WL 4214837 (D.Md. Sept. 16, 2021). The consensus apparently arising from these cases is that "physical loss or damage" to a "property" requires tangible damage to a structure or a tangible object within a property. See, e.g., Bel Air Auto, 534 F.Supp.3d at 509 ("[T]his Court is unpersuaded that the COVID-19 virus in some way physically altered [Plaintiff's] covered properties or the surrounding areas in a manner that triggers coverage under the plain language of the Policy."); Hamilton Jewelry, 2021 WL 4214837, at *9 ("Because [Plaintiff] has not demonstrated that its covered property suffered tangible, physical damage, its claims are not covered under the Policy."); Cordish Cos., 2021 WL 5448740, at *14 ("[P]hysical damage is 'a distinct, demonstrable, physical alteration of the property. . . .' [P]hysical alteration to the property is necessary." (quoting Newchops Rest. Comcast LLC v. Admiral Indem. Co., 507 F.Supp.3d 616, 623 (E.D.Pa. 2020))).

In this Court's view, these cases are meaningfully distinguishable from the instant case in two ways. First, the terms of the insurance policies at issue in those cases were

6

narrower than the terms of the Policies in this case. For example, the insurance policy in Bel Air Auto covered "direct physical loss or damage" and defines "property damage" in relevant part as "physical injury to tangible property." 534 F.Supp.3d at 497 (emphasis added); see also Hamilton Jewelry, 2021 WL 4214837, at *1 (providing coverage for "direct physical loss of or physical damage to Covered Property"). Second, unlike this case, the previous cases in which the Court addressed this issue did not include specific allegations that the plaintiffs' properties had in fact been contaminated by the Coronavirus. See, e.g., Bel Air Auto, 534 F.Supp.3d at 507 ("[Plaintiff] does not specifically allege that its property or surrounding property was in fact contaminated by the virus."); Cordish Cos., 2021 WL 5448740, at *16 ("[P]laintiff does not allege that the virus was actually present at any of its properties."); Hamilton Jewelry, 2021 WL 4214837, at *1 ("[Plaintiff] notified [Defendant] that it would seek coverage under the Policy for the business income allegedly lost during the government mandated shutdown period.").

Given the broad definition of "insured property" and the absence of a definition for "physical loss or damage" in the Policies, the consensus reflected in this Court's previous opinions on this subject does not offer clear guidance in this case. Assuming that "property" includes the entirety of a structure and not just each tangible object within its walls, an airborne virus arguably leads to physical damage to the property. In other words, a property may arguably be physically degraded—if only temporarily—by the existence of coronavirus in the air. As Tapestry states:

> Although the virus is not visible to the naked eye in the way some other physical losses might be, the very presence of [the Coronavirus] and . . . [COVID-19] . . . damages the indoor air

7

>of property and makes it dangerous to breathe, thereby causing the loss, in whole or in part, of that property's functional use.

(Mot. Certify at 1). Indeed, the Policies appear to contemplate the prospect of claims arising from some types of non-visible harm by specifically excluding claims for physical loss or damage arising from "nuclear radiation or radioactive contamination." (Policy at 16). Other federal courts have recognized that a change in air quality could constitute physical damage to a property. See Or. Shakespeare Festival Ass'n v. Great Am. Ins., No. 1:15-CV-01932-CL, 2016 WL 3267247, at *5 (D.Or. June 7, 2016) ("Defendant . . . stresses that the loss or damage must be physical, but does not give a sufficient explanation for why air is not physical. Certainly, air is not mental or emotional, nor is it theoretical."), vacated by settlement, No. 1:15-CV-01932-CL, 2017 WL 1034203 (D.Or. Mar. 6, 2017).

The Court also notes that Factory's Opposition, in which it vigorously insists that Maryland law is settled on this issue, is noticeably light on decisions by Maryland courts. Indeed, in a section entitled "[e]xisting case law provides ample guidance on the issue relevant to this case," Factory dedicates just one paragraph to a discussion of Maryland case law, citing four decisions by Maryland courts. (See Opp'n Pl.'s Mot. Certify Question Law Md. Ct. Appeals ["Opp'n"] at 10–11, ECF No. 36). Those cases provide only general guidance on interpreting insurance policies and do not speak with any specificity to the issue sub judice.[4] Factory's point is well-taken that there need not be case law directly on

---

[4] See Dutta v. State Farm Ins., 769 A.2d 948, 957 (Md. 2001) ("Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer."); Agency Ins. v. State Farm Mut. Auto. Ins., 998 A.2d 936, 940 (Md.Ct.Spec.App. 2010) ("Because an insurance policy is a contract, the usual principles of contract interpretation apply, 'which require that a contract be interpreted as a whole, in

8

point to avoid certification. See Bel Air Auto, 534 F.Supp.3d at 502 ("When the Court is satisfied that it is 'able to anticipate the way in which the Maryland Court of Appeals would rule,' certification is not necessary." (quoting Bethany Boardwalk Grp. LLC v. Everest Security Ins., --- F.Supp.3d ---, --- n.6, 2020 WL 1063060, at *11 n.6 (D.Md. Mar. 5, 2020))). But while general admonitions from Maryland courts regarding insurance contract interpretation are helpful, given the above-described ambiguity concerning key language in the Policies, the Court finds that this case is appropriate for certification because "there is no controlling appellate decision, constitutional provision, or Maryland statute on point." Gardner v. Ally Fin. Inc., 488 F.App'x 709, 713 (4th Cir. 2012).[5]

---

accordance with the objective law of contracts, to determine its character and purpose.'" (quoting Anderson v. Gen. Cas. Ins., 935 A.2d 746, 752 (Md. 2007))); Clendenin Bros. v. U.S. Fire Ins., 889 A.2d 387, 393 (Md. 2006) (requiring courts applying Maryland law to "accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense" (quoting Cheney v. Bell Nat. Life Ins., 556 A.2d 1135, 1138 (Md. 1989))); Muhammad v. Prince George's Cnty. Bd. of Educ., 246 228 A.3d 1170, 1179 (Md.Ct.Spec.App. 2020) (finding that courts must give effect to each clause "so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed" (quoting Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co., 73 A.3d 224, 233 (Md. 2013))).

[5] The Court further notes that previous decisions by this Court resolving Coronavirus-related insurance coverage cases have, like Factory in this case, relied on very little Maryland case law aside from decisions setting forth general standards of contract interpretation. See, e.g., Bel Air Auto, 534 F.Supp.3d at 503–510 (citing just one decision by a Maryland state court in its substantive analysis, which it distinguished because that decision favored coverage for loss of use of a property); Cordish Cos., 2021 WL 5448740, at *12–20 (citing just three decisions by Maryland state courts in its substantive analysis, all of which provided only general contract interpretation principles); Hamilton Jewelry, 2021 WL 4214837, at *3–10 (citing two decisions by Maryland state courts in its substantive analysis, one of which was approximately 120 years old and the other of which provided only general contract interpretation principles). The Court cannot help but question whether this issue is clearly settled in Maryland when its previous decisions have relied so heavily on decisions by non-Maryland courts in resolving the issue.

To be sure, a large majority of courts to have examined this issue have dismissed Coronavirus-related insurance coverage claims similar to those brought by Tapestry. See Trial Court Rulings on the Merits in Business Interruption Cases, Penn Law, https://cclt.law.upenn.edu/judicial-rulings/ (last visited Apr. 12, 2022). But a review of the hundreds of cases monitored by the Penn Law Covid Coverage Litigation Tracker reveals that dozens of courts have issued decisions denying motions to dismiss in these cases. Id. It is therefore facile to portray Tapestry's position in this litigation as inherently frivolous or unambiguously without merit. Moreover, the sheer number of these lawsuits reveals the widespread relevance of this issue and the potential value of guidance from Maryland's highest court on the issue. In other words, the frequency with which this issue arises demonstrates that a ruling from the Court of Appeals would "promote judicial economy and the proper application of [Maryland]'s law." Proctor, 990 A.2d at 1056. Accordingly, the Court will grant the Motion to Certify.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Tapestry's Motion to Certify a Question of Law to the Maryland Court of Appeals (ECF No. 29). A separate Order follows.

Entered this 25th day of April, 2022.

                                                 /s/
                                   George L. Russell, III
                                   United States District Judge